[Cite as *State v. Parker*, 2019-Ohio-5118.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                        :

    Plaintiff-Appellee,          :

                                              No. 108133

v.                                    :

ANDRE PARKER,                         :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 12, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-629347-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jonathan Block, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Jeffrey Gamso, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Andre Parker, appeals the trial court's denial of his presentence motion to withdraw his guilty plea. He raises one assignment of error for our review:

Andre Parker was deprived of his contractual rights under his plea bargain when the state wrongly asserted that he had breached the agreement.

{¶ 2} Finding no merit to his assigned error, we affirm.

## I. Procedural History and Factual Background

{¶ 3} Parker and his codefendant were indicted in June 2018 on two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), felonies of the first degree; two counts of robbery in violation of R.C. 2911.02(A)(2), felonies of the second degree; one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree; and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree. All of the counts except the weapons-disability charge carried one- and three-year firearm specifications, a 54-month firearm specification (which arises when an accused has a prior conviction for a firearm specification), a notice of prior conviction specification, and a repeat violent offender specification.

{¶ 4} According to the state's recitation of the facts, police had surveillance footage from a gas station where the robbery took place that proved the defendants' guilt. Parker and his codefendant robbed the victim in his car at gunpoint and stole the car from the victim. Parker was the driver who drove his codefendant to the gas station and then drove away once the codefendant secured the stolen vehicle. The codefendant held the gun during the incident, the gun went "off," and the victim's hand was injured. According to the state, it could also show through testimonial and

video evidence that Parker "actually [held] up the other victim with a firearm as well."

{¶ 5} On August 29, 2018, the day scheduled for trial, the state and defense counsel informed the court that the state had offered a plea deal to Parker but that they had been in discussions regarding the possibility of a better plea bargain if Parker cooperated with detectives and led them to his codefendant. The state explained that Parker had rejected its plea offer. Thus, according to the state, it would only consider offering a better plea deal if the court granted a continuance at Parker's request so that detectives could verify that Parker's information was true before they would offer a new plea.

{¶ 6} The court explained that the alleged events took place on April 22, 2018. Parker was indicted June 7 and arraigned on June 12. On June 19, the trial court set August 29, 2018 for trial. The court stated that it appeared as if Parker was attempting to delay trial. The court stated that it believed that trials should be held "as close in time to the alleged crime as possible" because it was more "just." The trial court denied Parker's request for a continuance.

{¶ 7} The trial court then asked the state to place the plea offer on the record. At that point, more discussions took place regarding why Parker was trying to cooperate with detectives so close to the trial date. Defense counsel explained to the court that Parker was related to his codefendant by blood and that the codefendant had been hiding from police and no one knew where he was until just the previous weekend.

{¶ 8} The state then placed the proposed plea offer on the record. The state explained that it was prepared to delete all of the specifications on Count 1, except the one-year firearm specification. Thus, Parker would plead guilty to first-degree aggravated robbery with a one-year firearm specification. Parker would also have to plead to Count 6 as indicted, having weapons while under disability, a third-degree felony. The state further indicated that Parker would have to agree to not contact the victim. The state told the court that because of the One-year firearm specification, Parker would be pleading to a "mandatory sentence." The state indicated that it would request the court to nolle the remaining counts and specifications. According to the state, the plea would reduce Parker's minimum time from 7.5 years to 4 years and would reduce the maximum time from 18.5 years to 12 years.

{¶ 9} The trial court asked Parker if he was interested in the state's plea offer. Parker stated that he was not.

{¶ 10} The trial court then asked the state what it was prepared to offer if Parker provided the information that led the police to his codefendant. The state explained that it could not "say exactly how much better this gets." The state told the court that if Parker provided information that led to the arrest of the codefendant, it was prepared to "get rid of any mandatory time as well as other specifications, RVO, repeat violent offender." The state further stated that "cooperation and additional information that might be helpful to the case" would

probably mean that the state would reduce mandatory time and "at least a one level of reduction based on that cooperation, possibly two depending on the information."

{¶ 11} The trial court then asked the parties, "What if [Parker] agreed to plead guilty to the plea bargain" the state had just proposed "and then sometime between now and sentencing, let's say within four to six weeks, he led you to" the codefendant, "and then prior to sentencing he moved to vacate the plea in favor of a better plea bargain," would it be a motion that the state "would be likely to join in?" The state responded, "Your Honor, given his participation, truthful statements, and leading to the apprehension of the codefendant, I think the state would then be prepared to join in on that motion to renegotiate the potential plea deal."

{¶ 12} The trial court then turned to defense counsel, asking him what he thought of the possibility of a plea bargain to the plea that had been offered that day and then if Parker's "information turns out to be what he's claiming it is," then there would be a joint motion or an unopposed motion to withdraw that plea before sentencing. The court explained that although it would not be part of the contract between the state and Parker, it typically grants agreed motions requesting a plea to be withdrawn before sentencing. The court stated, "It's not certain because nothing is certain, but it's almost certain to be granted." The court asked if Parker would consider that.

{¶ 13} Defense counsel stated that he would talk to Parker. The trial court told Parker that it would permit him to talk to his defense counsel privately. The court stated, "Maybe something can be done here today. Maybe not. If not, again,

that's fine. Plea bargain is your decision. It's not your lawyer's, certainly not the prosecutor's, not mine. Your lawyer can recommend or not recommend a certain plea, but in the end it's your decision. You have a right to a trial, you have the right to a fair trial, and as far as I'm concerned, you're going to get a fair trial here, but before we begin that fair trial, I want to make sure that all the possibilities of the negotiated settlement are exhausted. If you would speak to your lawyer for a few minutes I would appreciate it. Thank you."

{¶ 14} When the trial court went back on the record, defense counsel informed the court that Parker was interested in entering into a plea that day. The court stated, "Well, we'll talk about this as we go along, if we go along," but the plea was "with the possibility but not the guarantee that between now and sentencing [Parker] might be allowed to withdraw [his] plea and enter a new plea bargain." The court then asked Parker if he understood that and Parker indicated that he did.

{¶ 15} The trial court explained to Parker that before he pleaded guilty, it had to ensure that he pleaded guilty with the "full knowledge of possible consequences * * * to be sure the plea is voluntary." Parker then told the court that he had previously pleaded guilty to a crime, was 28 years old, could write and read in English, was not under the influence of any drugs or alcohol, did not have any mental or physical illness, was a United States citizen, was thinking clearly that day, and was satisfied with his defense counsel.

{¶ 16} Parker then told the trial court that he was still on probation in Cuyahoga C.P. No. 614057. The court explained to Parker that if he pleaded guilty

to the offenses that day, that he would be considered "to have violated probation in 614057 because of course it's a violation of probation to commit a new crime while on probation." Parker stated that he understood that.

{¶ 17} Parker then informed the trial court that he also had a case pending from Monroe County where he had been sentenced to 11 months to county jail but that it was pending concurrent with his jail time "right now." Once he completed that 11 months, he was facing three years of postrelease control in that case. The court stated that since Parker was not on postrelease control in April 2018, he could not have violated the terms of his postrelease control.

{¶ 18} The trial court then explained Parker's constitutional rights to him and made sure that Parker understood that he was waiving those rights. The court also explained the charges to Parker as proposed in the plea bargain and the maximum penalties involved for each offense.

{¶ 19} The trial court then stated that they had discussed the prospect of Parker entering into a plea bargain where he admits the two charges as described, but then "sometime within the next two, four, six weeks," he could request that his plea be withdrawn to obtain a plea that is "probably more favorable" to him than the present one. The court cautioned Parker that it wanted him to know "that if that's not what occurs then such a motion will be deliberated on and considered and ruled on, but [it could not] guarantee [him] that such a motion will be granted." Parker indicated that he understood that. The court further explained that the reason it

could not guarantee what would happen is because it was not a party to the contract between him and the state.

{¶ 20} The trial court then explained the duration of postrelease control that Parker was facing by pleading guilty and the consequences of violating that postrelease control.

{¶ 21} The trial court further told Parker:

All right. By the way, one more comment on the possibility that between today's plea and the scheduled sentencing date that you will come to the court with a request to withdraw today's plea in favor of a different plea bargain.

I've mentioned to you that that is not certain but let's just say quite likely to be granted if it's filed. It's only quite likely to be granted if it's a motion that the prosecutor does not oppose, if he agrees with you and your lawyer that today's plea should be taken back.

As I understand it, the only way he's going to agree to that is if you provide some [information] that they — their own investigation determines is truthful and valuable, probably [information] pertaining to [the codefendant]. Do you understand all that?

Parker stated that he understood.

{¶ 22} Defense counsel then requested that the state indicate on the record that it agreed with the court's rendition of the plea bargain. The trial court asked the state that if Parker pleaded guilty today as described and then provided the state with information that in its "discretion, determine[s] not only to be accurate but of some value," would the state "at least not oppose or even join a future motion to withdraw today's guilty pleas?" The state replied that the answer to both questions was "yes." The state further explained:

I believe I've satisfactorily placed the state's position and expectation per Mr. Parker's cooperation. Even, in the least, information is provided that secures the apprehension of the codefendant, we would then agree that we would reevaluate this plea deal. So I think even in the minimum, if just information is provided to the state to where the codefendant is apprehended, we would join in a motion to withdraw that plea.

{¶ 23} The trial court made clear that Parker understood that it was not likely to look favorably upon a motion to withdraw the plea to reinstate the indictment and go to trial.

{¶ 24} The state then said:

I think it's been made clear even by the Court that if Mr. Parker, over the next couple of days or hours or whenever this potential information is turned over, decides to — has a change of heart and fails to provide any information or fails to cooperate with the investigation, then obviously the state would oppose the motion to withdraw the plea and we would just ask to move forward on the plea as taken today.

{¶ 25} The trial court further explained to Parker:

So if you decide this afternoon, tomorrow, the next day that you don't want to say anything to the cops or the prosecutor about Lee Hunter, you can still file the motion to withdraw your plea, I can't prevent you from filing it, but the prosecutor will oppose it and it's far less likely to be granted. Do you understand all that?

{¶ 26} Parker indicated that he understood. Parker then pleaded guilty as set forth in the plea agreement. The trial court accepted Parker's pleas and found him guilty of aggravated robbery with a one-year firearm specification and having weapons while under a disability.

{¶ 27} The court held what was scheduled to be a sentencing hearing on October 1, 2018. At the beginning of the hearing, defense counsel informed the court that he had filed a written motion to vacate Parker's plea just before the hearing.

The state informed the court that it did not have time to oppose it in writing but that it would orally oppose Parker's motion.

{¶ 28} The court read Parker's motion into the record, which stated in relevant part, "After further consideration of the ramifications of his plea the defendant believes it is in his best interest to petition this court to vacate [his] plea prior to sentencing."

{¶ 29} Parker, however, told the court that he hired new counsel and that his new counsel was present at the hearing. Parker's previous defense counsel indicated that he wished to defer to Parker's wishes and get off of the case, which the trial court granted.

{¶ 30} Parker's new defense counsel told the court that he was prepared to proceed. He informed the court that he also filed a motion to withdraw Parker's plea just before sentencing. Parker's new counsel based Parker's motion to withdraw on (1) ineffective assistance of counsel, (2) the plea was "convoluted," making it too hard to understand, and (3) actual innocence. Defense counsel asked the court to set a date to hear Parker's motion to vacate his plea. He stated:

> Part of the problem and part of the confusion and part of Mr. Parker's fear of the system deals with the fact that, yes, indeed a long colloquy and everything was spelled out and the Court gave all parties concerned a month. When the State of Ohio showed up Friday with the detective without any discussion of the parameters of the proffer et cetera, et cetera et cetera, Mr. Parker worried that things were not going to turn out the way they were discussed, so the State opposes the continuance based on the fact that Mr. Parker didn't just step to on Friday afternoon. There was a month where all of that could have been accomplished. With a short continuance and a little bit of further consultation, we'll get Mr. Parker to where he needs to be and I believe his testimony, his

information is valuable enough to the State that the brief continuance would not be a waste of time.

{¶ 31} Over the state's objection, the court granted Parker's request for a continuance. The court indicated that it would set the next hearing for one month later.

{¶ 32} The court held the next hearing on October 31, 2018. Defense counsel argued his motion to the court. According to defense counsel, although Parker was represented by counsel at his plea hearing, he did not understand the "convoluted plea." Also according to defense counsel, Parker never had the opportunity to see the evidence against him. Defense counsel stated that he received the surveillance footage and was able to watch it one time. According to defense counsel, Parker sat in a vehicle the entire time and did nothing as his codefendant robbed the victim. Defense counsel explained that Parker had always maintained his innocence. Defense counsel requested the court to vacate Parker's plea so that he could work with the state to "obtain a mark that either reflects his cooperation and his lack of culpability."

{¶ 33} The state told the court that Parker's "cooperation was not given in full. There [were] some attempts," but the state was never able to apprehend his codefendant based on information provided by Parker. The state explained that it attempted on September 28, 2018, along with a detective, "to do a proffer statement," but that Parker told them that he was not interested with cooperation

and "to go about [their] way." The state indicated that Parker's prior defense counsel had been present.

{¶ 34} The state further explained that Parker provided an address where he believed his codefendant to be, but his codefendant was not there when police arrived. According to the state, the codefendant had left the location "approximately a half hour to 45 minutes beforehand." The state believed that individuals in the back of the courtroom at the time of the plea "tipped off" the codefendant. Parker gave police a few more locations of where the codefendant might be, but it never led to the arrest of the codefendant. Police ended up apprehending Parker's codefendant through an unrelated domestic dispute. The state told the court that the deal it had with Parker was that his cooperation must lead to the arrest of the codefendant.

{¶ 35} Defense counsel responded to the state's arguments. First, defense counsel stated that Parker's plea was not knowingly entered into because "the complicated and unorthodox conditions" of the plea and of "possibly substituting another plea at a later date based on conditions" was "more than he comprehended at that time." Second, defense counsel argued that Parker's plea was not voluntary because he had never seen the evidence against him and that he had maintained his innocence the entire time. Defense counsel stated that Parker's father came to him and asked him to help with Parker's case because neither Parker nor his father understood what occurred with Parker's plea.

{¶ 36} Defense counsel further argued that Parker cooperated with the state and police by offering more than one address. Parker stated that he told the police three different addresses of where they could find his codefendant. Defense counsel argued that just because the codefendant was not there because maybe someone "tipped" him off did not mean that Parker did not cooperate. Defense counsel further argued that it was not Parker's fault that his codefendant was not there or that police did not go back to that address to try to apprehend the codefendant at a later time. Defense counsel stated that Parker did not give police a fake address to allow his codefendant to "elude apprehension." Defense counsel told the court that Parker did everything that was asked of him. Defense counsel asked that the court give Parker the benefit of his bargain.

{¶ 37} The court disagreed with defense counsel. The court told defense counsel that the bargain was not contingent upon Parker's cooperation. The court stated that there was a possibility that the parties would come back to the court at a later date "with effectively a joint motion to withdraw the plea," but that "never materialized for whatever reasons." The court took Parker's motion under consideration.

{¶ 38} On November 6, 2018, the trial court denied Parker's motion to withdraw his plea. The trial court found that Parker's reasons for vacating his plea were not legitimate. It noted that there were no issues with ineffective assistance of counsel because the record indicated that previous counsel had viewed discovery (a surveillance video from the gas station where the aggravated robbery took place)

with Parker.  The trial court further found that Parker did not present evidence of actual innocence.  Regarding Parker's third claim of "convoluted plea," the trial court stated in its judgment entry:

> When the parties came to court on the morning of trial there was simple plea bargain offer pending: plead guilty to count one with single one-year firearm specification and to count six as charged and everything else would be dropped. Parker countered that offer with a proposal that he cooperate with the prosecution — "turn state's evidence" as it is occasionally called — in exchange for more favorable plea bargain of uncertain detail. Parker's counteroffer, however, required the court's involvement in the form of trial continuance of unknown duration so that he could provide the information he claimed to have and then the prosecutor and police could investigate the usefulness of that information, after which the better deal would be negotiated.  When the continuance was denied, Parker's two options were clear and uncomplicated, albeit grave: trial on the indictment or the guilty pleas to an amended count one and count six.
>
> It was at that point that I wondered aloud to the prosecutor whether, in essence, post-plea but presentence cooperation with law enforcement might result in better plea bargain.  This is the complication that Parker now claims confused him.   Still, two things were ultimately unmistakably clear: that the change of plea entered on the day of trial was not contingent and that there was no guarantee that presentence motion to withdraw the guilty pleas would be granted, even if the motion was premised on post-plea cooperation by Parker and joined by the prosecutor.  At various points during the plea hearing, after the possibility of post-plea cooperation with the prosecutor was mentioned, Parker was told:
>
> [The plea is] with the possibility but not the guarantee that between now and sentencing you might be allowed to withdraw your plea and enter a new plea bargain;
>
> You should consider that if you plead guilty as proposed today you will be going to prison for minimum of four years; and
>
> I cannot guarantee you that such motion [to withdraw today pleas in favor of better plea bargain] will be granted.

So, while it is true that the possibility of, and discussion about, an escape hatch from the plea bargain was unusual it was nevertheless explicit that the guilty pleas would have full effect unless Parker productively cooperated with the prosecution and successfully moved, on the basis of the cooperation, to vacate the plea bargain. The pending motion to vacate does not fit that description.

{¶ 39} The trial court sentenced Parker to one year in prison for the firearm specification and ordered that it be served prior to and consecutive to four years on the base charge of aggravated robbery. The trial court further sentenced Parker to 18 months for having weapons while under disability and ordered that it be served concurrent to the aggravated robbery charge, for a total of five years in prison. The trial court also notified Parker that he would be subject to a mandatory five years of postrelease control and of the consequences that he would face if he violated the terms of his postrelease control. The trial court also ordered that Parker pay court costs. It is from this judgment that Parker now appeals.

## II. Crim.R. 32.1

{¶ 40} Crim.R. 32.1, which governs motions to withdraw guilty pleas, states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her guilty plea."

{¶ 41} The standard of review for a decision on a motion to withdraw a plea is abuse of discretion. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or

unconscionable. *State v. Clark*, 71 Ohio St.3d 466, 470, 644 N.E.2d 331 (1994). It involves views or actions "that no conscientious judge, acting intelligently, could honestly have taken." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 129-130.

{¶ 42} In *Xie*, the Ohio Supreme Court explained the mandates of Crim.R. 32.1 as follows:

> The rule requires a defendant to show that the proceeding during which he entered that plea was extraordinarily and fundamentally flawed. [A] presentence motion to withdraw a guilty plea should be freely and liberally granted. Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing. Therefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea.

{¶ 43} This court held in *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), paragraph three of the syllabus, that:

> A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.

{¶ 44} A change of heart is not sufficient grounds to allow the withdrawal of the guilty plea, even in a presentence motion to withdraw the plea. *State v. Sylvester*, 2d Dist. Montgomery No. 22289, 2008-Ohio-2901, ¶ 19, citing *Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715; *State v. Lambros*, 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist.1988).

{¶ 45} Applying the *Peterseim* factors in this case, we conclude that the trial court did not abuse its discretion when it denied Parker's motion to withdraw his plea. Parker was represented by retained counsel. The trial court fully complied with Crim.R. 11 at the plea hearing where Parker fully understood the nature of the charges against him and the penalties he faced. The trial court also gave Parker a full hearing on his motion to withdraw and carefully considered all of Parker's arguments.

{¶ 46} When determining if a trial court abused its discretion when denying a motion to withdraw a plea, other courts also consider, inter alia, "whether the accused was perhaps not guilty of or had a complete defense to the charge or charges." *State v. Young*, 2d Dist. Greene No. 2003CA89, 2004-Ohio-5794, ¶ 11. Here, although Parker claimed that he was innocent and that his codefendant committed the aggravated robbery, the state explained that video surveillance footage showed — at a minimum — that Parker drove the "get away" car after his codefendant stole a car from a man at gunpoint. The state further stated that it had testimonial and video footage that showed that Parker "held up" the other victim (it is not clear if the other victim was also in the car) at gunpoint. Notably, Parker's retained counsel stated that he viewed the video surveillance footage and shared it with Parker before Parker entered into the plea.

{¶ 47} Parker argues that the state "promised to join in [his] motion to withdraw his plea if he told them where [his codefendant] could be found and police went to that place and apprehended [the codefendant.]" Parker claims that he did

what he said he would do and that the state "refused to perform its part of the agreement." The state, however, only promised to ask the court to dismiss several of the charges and specifications if Parker agreed to plead guilty to Count 1 with a one-year firearm specification and Count 6 as indicted. The state did just that, and the trial court nolled the remaining charges. The state did not promise Parker a better plea deal if the information he gave to the detectives did not lead to the apprehension of his codefendant.

{¶ 48} We further note that the trial court cautioned Parker several times that there was no guarantee that it would grant his motion to withdraw his plea — no matter the circumstances. The state also made clear several times that it would not oppose Parker's motion to withdraw his plea if Parker's cooperation actually led to the apprehension of his codefendant, which although seems to have been no fault of Parker's, did not do so. But also, the state told the court that Parker later refused to give the state a "proffer" regarding his codefendant. Specifically, Parker told the state and a detective that he would not cooperate with them and "to go about [their] way." Therefore, Parker's claim that "he did all that he could and controlled what he could control" is not true.

{¶ 49} After reviewing the record in this case, we find no abuse of discretion on the part of the trial court when it denied Parker's motion to withdraw his plea after it found that the motion was not based on a reasonable and legitimate basis.

{¶ 50} Parker's sole assignment of error is overruled.

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR